[Civ. No. 12246. First Dist., Div. Two. Dec. 31, 1942.]

CRAIG H. CHAMBERS, Appellant, v. CITY OF SUNNY-VALE (a Municipal Corporation) et al., Respondents.

L. F. Hobbs for Appellant.

Wretman & Bonacina, D. T. Jenkins and Niles E. Wretman for Respondents.

NOURSE, P. J.—Plaintiff appeals from a judgment by the court sitting without a jury denying him the right of recovery of the salary of a police officer against the city of Sunnyvale or the members of the city council.

In April, 1931, plaintiff was appointed a policeman at a salary of $135 per month by resolution of the city council upon the request for an extra man by the chief of police. Plaintiff was warned several times about intoxication but was never officially dismissed by resolution of the council. In April, 1938, he became extremely ill with cirrhosis of the liver, stopped work and has never performed any police duties since. In May, 1938, one Yglesias was appointed police officer and thereupon commenced and still continues to carry on the duties of that office in plaintiff's stead. Since April, 1938, plaintiff has not filed any claim for salary, which claim, prior to that time, he had filed at the end of each month. He has never presented himself for duty and has accepted private work at various times. This suit was brought for

salary accruing from May 1, 1938, to March 31, 1940, and for salary accruing subsequently, up to the time of the trial.

The appellant bases his original appointment on section 852 of the Municipal Corporations Act, Deering's Gen. Laws, Act 5233. The respondent does not agree, and cites other provisions of the act relating specially to police officers. In the light more favorable to appellant we may assume that section 852 is controlling. As amended in 1927, the section applicable at the time of appellant's appointment provided that: "The board of trustees [now the city council] shall appoint the marshal and the recorder; they may also, in their discretion, appoint an attorney . . . and such other subordinate officers as in their judgment may be deemed necessary, and fix their compensation. Said officers shall hold office during the pleasure of said board." The same section authorized the board of trustees to designate the number of deputies to be appointed by the respective officers, and such deputies were to "hold office subject to the pleasure of the board of trustees and of their respective principals." (Stats. 1927, pp. 427, 428.)

The trial court found that because of failure to follow the procedure outlined in the statute the city council had not made a valid appointment of the plaintiff, that he was a "de facto" officer only from the date of his appointment in 1931 to the 1st day of May, 1938, when he resigned from said office by abandoning the same; that on the latter date the city council appointed another police officer in the place and stead of plaintiff, and that said person has ever since performed the duties theretofore performed by plaintiff and received the salary therefor, and that since that date the plaintiff had known that another had been appointed in his place and had received the salary attached to such office. It was found that for each and every month during the period from April 6, 1931, to April 30, 1938, plaintiff had filed with the city clerk his claim in writing for the salary for the preceding month; that after May 1, 1938, plaintiff made no claim to any salary or to the right to exercise the duties of a police officer until April 15, 1940, when a claim for the full salary from May 1, 1938, was filed. The circumstances supporting the finding that plaintiff had abandoned the position were found to be "that on said 30th day of April, 1938, the plaintiff was taken ill with a sickness caused by his excessive drinking of alcholic liquor, that since said last mentioned

date the plaintiff has performed no duties as such police officer . . . '' and that ''the plaintiff at all times after the said 1st day of May, 1938, believed that he had been removed by his superior officers from any office previously held by him with said city because of his excessive use of alcoholic liquors, and acquiesced in said removal, and knew that the Chief of Police, the Commissioner of Public Health and Safety, and the members of the City Council believed that he (plaintiff) had ceased to be an officer of said city, and that said city and its officers were acting upon said belief; that it never was the intention of the plaintiff to claim any salary from the said city for the time he was not performing duties, and it was only when he came to the conclusion in the month of April, 1940, that the city would not re-employ him as a police officer that he decided to claim any salary from the city; that the plaintiff is estopped to now claim to be an officer of said city or to claim salary as such.''

The evidence fully supports these findings. It was common knowledge with the municipal authorities that plaintiff was unable to perform his duties because of his conduct and habits, that he had been frequently warned by his superiors, that he promised to change his habits, that he and his superiors all assumed that he was ''out,'' and that he was given some assurances that he might be considered for re-appointment if conditions changed.

It would be difficult to find a clearer case of abandonment, acquiescence, and estoppel. ▮ By the express terms of the Municipal Corporations Act these appointments were made ''subject to the pleasure of the board of trustees (city council) and of their respective principals.'' Hence, there is no question of civil service status involved, no term of office, no requirement for notice of hearing before removal becomes effective. The case is simply one where the indefinite term of the appointee is ended by the appointment and qualification of his successor. This principle of law is so well settled that the authorities treat it without elaboration. (43 Am.Jur. p. 33; *McKannay* v. *Horton*, 151 Cal. 711, 721 [91 P. 598, 121 Am.St.Rep. 146, 13 L.R.A. N.S. 661].)

▮ It is also a settled rule that, where a public officer appointed without term and subject to the pleasure of the appointing power, voluntarily abandons the office and performs none of the duties incident to the office, he is not

entitled to compensation. (43 Am.Jur., p. 163; *Phillips* v. *Boston*, 150 Mass. 491 [23 N.E. 202, 204] ; *Nicholas* v. *United States*, 257 U.S. 71 [42 S.Ct. 7, 66 L.Ed. 133, 136].)

In the latter case this principle of abandonment—coupled with that of estoppel, which is equally applicable here—is stated in this language: "It must be remembered that we are dealing with the discharge of public duties which it is important shall be carried on regardless of the personnel of those who discharge them. While one inducted into office or public employment is entitled to the privileges or emoluments thereof, until legally separated therefrom, he is not absolved from the duty of diligence upon his part in the assertion of his right to the office, or to the compensation attached thereto. Public policy requires that the government shall be seasonably advised of the attitude of its officers and employees attempted to be displaced when they assert illegal removal or suspension as a basis for the recovery of the office or its emoluments. This is necessary in order that proper action may be taken in the public interest, as well as that which is required to vindicate the rights of one wrongfully removed from the public service."

We conclude that appellant was legally removed from office at the time his successor was appointed and qualified, that he thereafter voluntarily abandoned the office, and that, by his failure to assert or claim any right to the office, or to the salary incident thereto, for a period of nearly two years, he is now estopped to claim any salary for the time of his unemployment.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred