[Civ. No. 8290. Fourth Dist., Div. Two. June 28, 1967.]

JOHN RICHARD BALL, Plaintiff and Respondent, v. THE CITY COUNCIL OF THE CITY OF COACHELLA, Defendant and Appellant.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

138

Harry B. Cannon for Defendant and Appellant.

Leon W. Rosenberg for Plaintiff and Respondent.

TAMURA, J.—The City Council of the City of Coachella appeals from a judgment directing the issuance of a peremptory writ of mandate commanding the city to reinstate the respondent as its chief of police and awarding him judgment for accrued salary.

Coachella being a general law city, the chief of police is appointed and holds office "during the pleasure of the city council." (§§ 36505-36506, Gov. Code.[1]) Respondent, who had been the duly appointed chief of police, was dismissed by the city council on Apirl 30, 1965. He sought reinstatement by filing a petition for writ of mandate alleging in substance that the countil's action was arbitrary and discriminatory in that the only reason he was dismissed was because he exercised his statutory rights under chapter 10, division 4, title I of the Government Code (§ 3500 et seq.) to join and participate in activities of an employee organization. As a return to the alternative writ and order to show cause, appellant filed a general and special demurrer. The demurrers were overruled and the matter was thereafter tried on the petition and answer.

Although the evidence is conflicting in many respects, viewed in the light most favorable to respondent, it may be summarized as follows:

Respondent was first employed by the city in 1959. He was appointed acting chief in May 1962, and chief in June 1962. During this term he had on several occasions discussed with the police commissioner, who was also a member of the city council, grievances among the officers in his department concerning working conditions and hours. His efforts were apparently fruitless. In February 1965 he personally appeared before the city council and presented a request by his officers that they be given certain paid holidays, but the request was summarily rejected. Shortly thereafter the officers, and later the respondent, joined the American Federation of State, County and Municipal Employees, Local No. 1239. Following respondent's union membership changes were made in the administration of the police department. The police commissioner, over respondent's objections, ordered the elimination of the motorcycle traffic patrol. In addition, respondent was instructed to do no more hiring or firing without the concurrence of the commissioner although that responsibility had theretofore been solely the chief's. Also, at an open public

---

[1]Government Code, section 36505 provides: "The city council shall appoint the chief of police. It may appoint a city attorney, a superintendent of streets, a civil engineer, and such other subordinate officers or employees as it deems necessary."

Government Code, section 36506 provides: "By resolution or ordinance, the city council shall fix the compensation of all appointive officers and employees. Such officers and employees hold office during the pleasure of the city council."

meeting, the council ordered that an inquiry be directed to the Sheriff of Riverside County concerning the cost of obtaining police services through his department. When respondent learned of the council's action, he contacted the police commissioner who informed him that the information was sought to compare costs and that it might be cheaper to do away with the police department.

On April 27, 1965, the city council met for an adjourned regular meeting, four of the five councilmen, including the mayor, being present. Following the transaction of certain items of business, the council adjourned to an executive session to consider personnel matters. Respondent, who was in attendance at the council meeting as was his usual custom, was requested to join the councilmen. At the outset he was informed that the executive session was called to discuss a request for his resignation. The mayor stated that the fact that the police officers had joined the union together with the pendency of a recall movement against the councilmen had made the situation in the city intolerable, and that respondent was going to be, in effect, the "scapegoat." In response to an inquiry as to why his men joined the union, respondent stated that they did so for job protection and representation. Comments were made by the councilmen that the fact that the officers had joined the union, under apparent sanction of the chief, had created a chaotic situation in the city. Respondent denied instigating the union movement among his men and refused to resign. Following further discussion the council voted to dismiss respondent. Although during the meeting respondent made several requests for a "statement of charges," the only response he received was that the charges would be set forth in a formal resolution to be later adopted by the council. The resolution as adopted, however, merely stated that the council had determined "it was not within the public interest" that respondent continue as chief of police.

The court found that respondent was terminated because of his membership and participation in union activities and concluded that the action of the city council was arbitrary and illegal in that it deprived respondent of his rights under Government Code, section 3500 et seq. A judgment was entered ordering the issuance of a peremptory writ of mandate directing the council to reinstate respondent and awarding him $1,950 for accrued salary.

Although stated in varying language and urged as several separate grounds for reversal, appellant's underlying

thesis is that since respondent could be dismissed without cause and without notice or hearing, the reason or motive which prompted dismissal is not a proper subject of judicial inquiry. On this premise appellant contends that the petition for writ of mandate failed to state a cause of action and that objections should have been sustained to the introduction of evidence relating to the reasons for respondent's dismissal.

 A public officer or employee serving at the pleasure of the appointing authority may not have a ''vested'' right to retain his employment, but it does not follow that the power to terminate his services is an unbridled one free of all legal restraints. Although it has been held, as appellant urges, that a public employee serving at the pleasure of the appointing authority may be terminated without cause and without notice or hearing (*Humber* v. *Castro Valley County Fire Protection Dist.*, 214 Cal.App.2d 1, 13 [29 Cal.Rptr. 158]; *Cozzolino* v. *City of Fontana*, 136 Cal.App.2d 608, 611 [289 P.2d 248]; *Hackler* v. *Ward*, 105 Cal.App.2d 615, 616-617 [234 P.2d 170]; *Chambers* v. *City of Sunnyvale*, 56 Cal.App.2d 438, 441 [132 P.2d 849]) a caveat must be added that the power may not be exercised arbitrarily in disregard of the employee's constitutional rights. (*Bagley* v. *Washington Township Hospital Dist.*, 65 Cal.2d 499, 503-504 [55 Cal.Rptr. 401, 421 P.2d 409]; *Rosenfield* v. *Malcolm*, 65 Cal.2d 559, 562-563 [55 Cal.Rptr. 505, 421 P.2d 697] or statutory rights. (*International Assn. of Fire Fighters* v. *County of Merced*, 204 Cal. App.2d 387, 395 [22 Cal.Rptr. 270].) Recent decisions have discredited the notion that the power to dismiss a public employee without cause includes the power to dismiss for any cause. Thus, continuance in employment, even of one serving at the pleasure of the appointing power, may not be conditioned upon the employee's abstinence from exercising a constitutional right to engage in political activity not incompatible with the performance of his duties. (*Bagley* v. *Washington Township Hospital Dist.*, *supra*; *Rosenfield* v. *Malcolm*, *supra*.) Courts are empowered to review the dismissal of a public employee, although he may not have protected tenure, in cases which indicate that the dismissal resulted from the exercise by the employee of a constitutional right. (*Rosenfield* v. *Malcolm*, *supra*; see *Stanton* v. *Dumke*, 64 Cal. 2d 199, 205-207 [49 Cal.Rptr. 380, 411 P.2d 108].)

Although the instant case does not involve a constitutional right, the trial court did find that respondent was dismissed

because he exercised a statutory right to join and participate in the activities of an employee organization.

In 1961 the Legislature enacted chapter 10, division 4, title I of the Government Code (Stats. 1961, ch. 1964, p. 4141) in order to improve employer-employee relations in public agencies throughout the state by providing a uniform basis for recognizing the right of public employees to join organizations in their employment relations.[2] (§ 3500 et seq., Gov. Code; *Professional Fire Fighters, Inc.* v. *City of Los Angeles,* 60 Cal.2d 276, 294-295 [32 Cal.Rptr. 830, 384 P.2d 158].) The act grants to public employees "the right to form, join and participate in the activities of employee organizations of their own choosing." (§ 3502, Gov. Code.) " 'Public employee' means any person employed by any public agency excepting those persons elected by popular vote or appointed to office by the Governor of this state." (§ 3501, subd. (c), Gov. Code.) "Employee organization" is defined as "any organization which includes employees of a public agency and which has as one of its primary purposes representing such employees in their relations with that public agency." (§ 3501, subd. (a), Gov. Code.) For the protection of the employees in the exercise of the rights granted, the Legislature directed that "Public agencies and employee organizations shall not interfere with, intimidate, restrain, coerce or discriminate against public employees because of their exercise of their rights under section 3502." (§ 3506, Gov. Code.)

In *International Assn. of Fire Fighters* v. *County of Merced, supra,* 204 Cal.App.2d 387, a discharged county firefighter having no civil service status sought a writ of mandate to compel reinstatement alleging that his termination was occasioned by his activities on behalf of a firefighters' union. Section 1960 et seq. of the Labor Code, added in 1959 (Stats. 1959, ch. 723, § 1, p. 2711), recognize the right of firefighters to join labor organizations and to present grievances concerning wages, hours and working conditions to the governing body through such organization. The trial court found that the employee's dismissal was not due to his union activities and denied the writ. On appeal, however, it was held that the trial court's finding was not supported by substantial evi-

---

[2]Although section 3508 of the Government Code authorizes a public agency, by adoption of a resolution or ordinance after public hearing, (fn. 2, p. 5) to except employees engaged in law enforcement from the operation of the statute (*Professional Fire Fighters, Inc.* v. *City of Los Angeles, supra,* 60 Cal.2d 276, 289), there is no evidence that the City of Coachella ever took any action under that section.

dence and the judgment was reversed with directions to the trial court to scrutinize "the reasons advanced for [the employee's] discharge, and if the termination of his employment was effected because of legitimate activities as defined herein on behalf of the formation of the union, he should be reinstated." *International Assn. of Fire Fighters* v. *County of Merced, supra,* at p. 395. That case is persuasive authority for upholding the judgment in the instant case. Chapter 10, division 4, title 1, of the Government Code extends to all public employees substantially the same rights as those previously granted to firefighters under sections 1960 et seq. of the Labor Code. In section 3506 of the Government Code, as in section 1960 of the Labor Code, public agencies are prohibited from interfering with the exercise of the organizational and representation rights of public employees. In fact, the language of section 3506 appears stronger and more explicit than the language of the comparable Labor Code section relating to firefighters.[3]

Appellant contends, however, that the enactment of chapter 10, division 4, title 1 of the Government Code, was not intended to restrict the power of a city council of a general law city to terminate service of those officers or employees serving at the pleasure of the council. In particular, appellant relies upon the following provision of Government Code, section 3500: "Nothing contained herein shall be deemed to supersede the provisions of existing state law and the charters, ordinances and rules of local public agencies which establish and regulate a merit or civil service system or which provide for other methods of administering employer-employee relations." The argument is without merit. The quoted provision was obviously included to avoid any possible construction that the statute was intended to supplant any existing civil service system, merit plan, or other local regulations dealing with employer-employee relations. This is made explicit by the ensuing sentence of section 3500, which reads: "This chapter is intended, instead, to strengthen merit, civil service and other methods of administering employer-employee relations through the establishment of uniform and orderly methods of communication between employees and the public agencies by which they are employed."

---

[3]Section 1960 of the Labor Code provides: "Neither the state nor any county, political subdivision, incorporated city, town, nor any other municipal corporation shall prohibit, deny or obstruct the right of firefighters to join any bona fide labor organization of their own choice."

■ It is apparent from the foregoing that appellant's contention that evidence relating to the reasons or motive for respondent's termination was inadmissible is likewise untenable (*Rosenfield* v. *Malcolm, supra,* 65 Cal.2d 559, 562-563).

Appellant relies upon *Stanton* v. *Dumke, supra,* 64 Cal.2d 199, for the proposition that the petition for writ of mandate in the instant case failed to allege facts sufficient to constitute a cause of action. In *Stanton,* probationary teachers at San Jose State College sought a writ of mandate to compel the Chancellor of state colleges to restore them to the faculty. Petitioners, who would have acquired tenure had they been reemployed for the fourth year, were notified by the college president that they would not be reemployed. In their petition for writ of mandate, the teachers alleged that the refusal to reemploy them was based upon non-academic reasons including their activities on behalf of a teachers' union. A demurrer to the petition was sustained, and the action was dismissed. On appeal the judgment was affirmed. In that case, however, petitioners had appended to their petition for a writ of mandate a transcript of the administrative hearing conducted by the Chancellor inquiring into petitioners' claim that the failure to rehire them was based solely upon non-academic reasons. The transcript revealed that petitioners were afforded a full and fair administrative hearing and the record supported the Chancellor's findings that neither union activities nor any other non-academic reasons entered into the decision not to reemploy petitioners. In affirming the judgment, the court stated: "Plaintiffs could ask for no more than an opportunity to present their charges of arbitrary denial of such rights at a fairly conducted hearing at which the record supports the decision of the employing authority. Since that hearing was accorded to plaintiffs here, and the record supports the decision, we need not further explore, or adjudicate, the claimed constitutional issue." As the Supreme Court noted in *Rosenfield* v. *Malcolm, supra,* at page 564, in distinguishing *Stanton* v. *Dumke, supra,* absent the transcript of the proceedings of the hearings before the chancellor, the petition for writ of mandate in *Stanton* would have stated a valid cause of action. In the instant case, as in *Rosenfield, supra,* respondent was not accorded notice or hearing.

■ Appellant's contention that respondent failed to exhaust his administrative remedies is likewise without merit. Appellant does not base its contention on the existence of a statute or a city ordinance or regulation establishing a

clearly defined procedure "for the submission, evaluation and resolution of complaints" by an employee who claims to have been wrongfully dismissed. (See *Rosenfield* v. *Malcolm, supra,* p. 565.) It merely directs our attention to the following provision of the Brown Act: "Nothing contained in this chapter shall be construed to prevent the legislative body . . . from holding executive sessions . . . to consider the appointment, employment or dismissal of a public officer or employee or to hear complaints or charges brought against such officer or employee by another public officer, person or employee *unless such officer or employee requests a public hearing.*" [Italics supplied.] (§ 54957, Gov. Code.) The italicized provision does not provide a procedure for administrative hearing; it only grants an officer or employee the right to have a matter pertaining to his employment considered publicly rather than in an executive session.

Respondent having alleged and the Court having found on substantial evidence that his dismissal was in violation of rights granted to him under the Government Code, mandamus was the appropriate relief. (*Bagley* v. *Washington Township Hospital Dist., supra,* 65 Cal.2d 499; *Rosenfield* v. *Malcolm, supra,* 65 Cal.2d 559; *International Assn. of Fire Fighters* v. *County of Merced, supra,* 204 Cal.App.2d 387, 395.)

Appellant contends that the judgment is void because the trial judge failed to disqualify himself on a motion under section 170.6 of the Code of Civil Procedure. The chronology of the events giving rise to this issue is as follows: On April 29, 1965, an alternative writ and order to show cause were issued. As a return appellant demurred to the petition. The demurrer was heard and overruled by Judge Brown with leave to answer, an answer was filed and the matter was set to be heard on the merits on July 6. The parties were apparently duly notified that the case had been assigned to Department "B," the department in which Judge Brown normally presided. When Judge Brown called the case on July 6, appellant made a motion to disqualify him under section 170.6. On July 9 Judge Brown denied the motion and thereafter tried the case on the merits. He made findings and entered judgment on August 2.

If a judge fails to disqualify himself upon the filing of a timely motion under section 170.6, he is without jurisdiction to take any further action in connection with the case and, if he does so, his subsequent acts, including all orders and the

judgment are void. (*Andrews* v. *Joint Clerks etc. Committee,* 239 Cal.App.2d 285, 294 [48 Cal.Rptr. 646] ; *Estate of Cuneo,* 214 Cal.App.2d 381, 384 [29 Cal.Rptr. 497] ; *McCauley* v. *Superior Court,* 190 Cal.App.2d 562, 564-565 [12 Cal.Rptr. 119].) In the instant case, the motion was untimely under the law as it existed when Judge Brown ruled upon it. At that time a motion to disqualify under section 170.6 came too late if it was filed after the judge had heard and decided any contested issues of law or fact in the action or proceeding. (*McClenny* v. *Superior Court,* 60 Cal.2d 677, 683 [36 Cal. Rptr. 459, 388 P.2d 691] ; *Jacobs* v. *Superior Court,* 53 Cal.2d 187, 190 [1 Cal.Rptr. 9, 347 P.2d 9] ; *Swartzman* v. *Superior Court,* 231 Cal.App.2d 195, 200 [41 Cal.Rptr. 721] ; *Robinson* v. *Superior Court,* 186 Cal.App.2d 644, 649 [9 Cal.Rptr. 130] ; *Michaels* v. *Superior Court,* 184 Cal.App.2d 820 [7 Cal.Rptr. 858].) Judge Brown's order denying the motion was valid when made.

In 1965 the Legislature amended section 170.6 by adding the following provisions to subdivision (2), section 170.6 : ". . . The fact that a judge has presided at or acted in connection with a pretrial conference or other hearing, proceeding or motion prior to trial and not involving a determination of contested fact issues relating to the merits shall not preclude the later making of the motion provided for herein at the time and in the manner hereinbefore provided." (Stats. 1965, ch. 1442, § 1, pp. 3375-3377.) The amendment did not become effective until September 17 (Stats. 1965, vol. 1, p. A-3) whereas the motion to disqualify had been denied on July 9, and judgment had been entered on August 2. Although the amendment did change the law so that a motion under section 170.6 may now be made even after a hearing or proceeding prior to trial which does not involve a determination of contested issues of fact relating to the merits (*Kohn* v. *Superior Court,* 239 Cal.App.2d 428, 429-430 [48 Cal.Rptr. 832]), it may not be given retroactive effect to render timely the filing of the motion in the instant case. (Code Civ. Proc., § 3; *Barry* v. *Barry,* 124 Cal.App.2d 107, 112 [268 P.2d 147] ; *Schmitt* v. *White,* 172 Cal. 554, 559 [158 P. 216].) The amendment did not retroactively divest the trial court's jurisdiction to try the case on its merits.

 Appellant urges that its failure to receive a copy of the findings and conclusions before they were signed and filed by the court rendered the judgment void. The 1959 amendments to section 634 of the Code of Civil Procedure requiring

service of proposed findings and conclusions on opposing party, has been held to be directory only and compliance is not necessary to the validity of a judgment. (2 Witkin, Cal. Procedure (1954) Trial, § 107, p. 1838; *Fairbairn* v. *Fairbairn,* 194 Cal.App.2d 501, 514 [15 Cal.Rptr. 548].) Where such omission prejudices a party, reversal may be required (see *Fairbairn* v. *Fairbairn, supra*), but appellant has failed to show prejudice because of the claimed omission. Moreover, since appellant failed to object to this irregularity at the trial court, it is precluded from raising the point on appeal. (*Pruyn* v. *Waterman,* 172 Cal.App.2d 133, 140 [342 P.2d 87].)

 Appellant finally urges that the portion of the judgment awarding respondent $1,950 back pay was erroneous in that there was no pleading of the amount of salary respondent was earning, nor was any evidence introduced thereon. At oral argument, respondent conceded that appellant's point in this regard is well taken. The record is devoid of any evidence relating to the amount of accrued salary to which respondent would have been entitled.

The judgment is modified by striking therefrom the dollar amount awarded to respondent and as so modified, is affirmed.

Kerrigan, Acting P. J., concurred.